Lighting System, but just quickly, I'll review. Please, when the light turns red, your speaking time is up, so please just finish up your thought. Unless, of course, we've asked you a question that brings you over the time, then we do want to hear your answer to the question, so please go ahead and answer the question. All right. Our first case of the day is FDIC v. Certain Underwriters at Lloyd's of London. May it please the Court, Michelle Ognebeni on behalf of the FDIC as receiver for Omni National Bank. I'd like to reserve three minutes for rebuttal. All righty. The central question before this Court is straightforward. Did the FDIC make a timely demand for interest under Georgia law? We think it did for several reasons. First, the prejudgment demand requirement created by the Georgia courts has only been applied in cases where the judgment at issue awarded the principal amount due. The coverage action didn't do that. The judgment contains no language ordering Underwriters to pay the FDIC the policy limits, nor could it have since no claim for the policy limits was made or litigated. Underwriters even now says that they could have disputed the principal amount due and that they just made a business decision to pay at the time that they did. Second, we know that the demand requirement established by the Georgia courts would not have been intended to extend to declaratory judgments because claims for coercive relief like money damages cannot accompany claims for declaratory relief under Georgia law. So it just wouldn't have occurred to the Georgia Supreme Court that its requirement to demand interest before judgment would apply to a declaratory judgment. In addition, interpreting the demand requirement to require a party to demand interest as part of a declaratory judgment action is also inconsistent with federal law. It essentially treats the interest demand as a compulsory counterclaim, even though neither the FDIC nor the insureds had any right to payment under the policy at the time they served their answers in the Underwriters action. The stipulated judgments were not entered until at least a year later. Before then, there was no claim for indemnity under the policy that could have been asserted. To adopt Underwriters' position, the court would need to hold that an insured can be precluded from receiving all of the compensation to which he's entitled simply because the insurance company decided to voluntarily pay, even though it was years late. Can I ask you a question? Sure. So it seems to me that the motivating concern behind the Georgia law is that the party that has the right to pay should have notice of it and respond to it. So how would you address that concern if we were to hold the way that you're suggesting? I think that that concern is addressed in this litigation. You can see that it has been afforded to Underwriters the opportunity to contest the interest amount. So you're saying that in the action, in this particular action, that is, after the declaratory judgment is denied because the court finds that Lloyds has to provide the money, then when you go to enforce the judgment, that is the time that Lloyds can challenge the pre-judgment interest? Well, I'd like to just clarify. We don't think that we would have been able to enforce that declaratory judgment that was entered in the coverage deck action because it didn't include an order to pay. It didn't include the type of language you'd expect to see that would give a party a right to seek a writ of execution or something like that. So we don't think that that judgment alone did the entirety of the job. Underwriters, they said they made a business decision to just pay us the full policy limits, but even now they're saying that they might have had defenses. I'm not really sure what they would be, but they say that they might have asserted defenses had they known earlier that we were going to seek interest as well. And so even they don't seem to think that the coverage declaratory judgment alone would have been enough to give us a right to go to court to enforce that judgment, to get payment if they decided they didn't want to voluntarily pay. Right. Okay. So I guess there are two different, because of the procedural posture of this, there are two different possibilities that could have happened. One was they could have, you could have filed suit against them to obtain the money instead of having them just go ahead and agree. If you had done that, that would have been the opportunity for them to challenge the pre-judgment interest. Assuming that you sought pre-judgment interest in that particular case, I guess. Right? Yes. All right. And then the other way, which happened here, is that they just decided to pay without any kind of court order to do so. And so they could, well, so then the only opportunity that you would have had under your theory of the case to get the pre-judgment interest, the first opportunity would have been to file suit for the pre-judgment interest, which is what you did here. Exactly. And that's when they would have had the opportunity to contest the pre-judgment interest. Exactly. It's basically as if underwriters decided to enter into a unilateral settlement agreement. They're like, okay, well, we're going to give you the $10 million and this amount that we've calculated as the post-judgment interest we think you're entitled to, and that's it. But they didn't reserve their rights. We did. We accepted the money, but we said we reserve our rights to seek the balance that we think we're entitled to, which is this pre-judgment. I don't want to call it pre-judgment interest. It's the enhanced statutory interest under Georgia law. And so your position is that they had noticed regardless because at the time that they made the business decision to pay you the $10 million, they were advised that you were seeking the pre-judgment interest. Right. Right. And they knew that we were seeking pre-judgment interest at the time that they made that decision and tendered the payment without reserving their and seek the balance to which we think we're entitled under Georgia law. And the Georgia courts, they just haven't been presented with a case with this procedural posture. But every indication in those decisions is that they're trying to give interest in all circumstances where it's been validly demanded. And we think we have made a valid demand here. It's just the fact that underwriters decided to voluntarily pay that they're using as some loophole to get out of paying it. Can I ask you, when did your claim for the pre-judgment interest become liquidated? It became liquidated upon entry of the stipulated judgment against Klein. That's the date that we believe that it became liquidated because that's the time where the claim for indemnity became fixed because underwriters, under the law, underwriters decided to abandon the defense of their insureds. They left them on their own. So the insureds entered into settlement agreements with us in the action for liability that we were bringing against them. And it seems very well-established. We've cited the cases in our brief that once an insurer decides to abandon their insureds like that, they don't have grounds to challenge the amount of the settlement except, you know, there's some allegation of bad faith, which underwriters haven't gone as far as to say here. They just say that, oh, because the insureds had no skin in the game, we had potential defenses and we could have challenged the amounts that we were obligated to pay of the settlement. But even in the case that both parties cite, it was the same situation where the insureds basically entered into a settlement agreement and both parties agreed that the that recovery would only be sought from the insurance policy, and that's the case here. Here the problem is that the Klein judgment, I guess, wasn't finalized, excuse me, until more than a year after the case was filed by Lloyds. Right. All right. Now, if the Klein judgment, and so you, so your position is, obviously, because it was an indemnity action, you couldn't, you had no standing or ability to seek, to seek the money against Lloyds of London at the time that your answer was due. Right. All right. Where in the litigation, how far along was the litigation at the time that the Klein judgment was entered, or settlement? The Klein judgment was entered about a year after all the parties filed their, served their answers in the DEC action. I'm not sure exactly what motions practice had occurred by that point, but I think it's important to point out that even if the FDIC could theoretically have asserted a counterclaim at that point for indemnity and the prejudgment interest, all of that, you know, that would have been at the district court's discretion. And the Georgia law, everything that you see in the cases indicates that this word of interest is mandatory, automatic, as long as a demand is made. So to make it contingent on the district court's approval of us amending to assert a counterclaim for it just doesn't seem to jive with the Georgia law. We have to make a rule here. And so we have to decide what the, I mean, you know, what the right answer is under the law. And it seems to me that there's a question about when, depending on when the judgment becomes, for lack of a better term, ripe, right, to file it against or to seek a claim against Lloyd's, there may be a responsibility on the part of the FDIC to at least seek to amend its answer to bring the action. And if the district court denies it because it says, hey, we're too far along in the litigation, this is just a deck action, this is all we're doing, then it seems to me, of course, that would be the first opportunity, the first opportunity FDIC would have to assert the prejudgment interest claim would be after that litigation ended. And it wouldn't prejudice you to that, to do that. I'm just talking off the top of my head here. So my question then is, at what point in the litigation, and let me, if we were to, if the judgment, if the Klein judgment had come in before Lloyd's filed the deck action, then it seems to me you would have been required to file the counterclaim. So we're sort of in this middle ground in between, right, where the deck action is filed after the, I'm sorry, the deck action is filed, then a year or more later, the Klein judgment becomes finalized, but the deck action isn't finished. And so I'm wondering what is the rule that you would, that you would say governs here about when during the course of the litigation the deck action kind of litigation, when the judgment that you are seeking indemnity on becomes finalized, at what point would you be required to go ahead and amend your claim and seek the prejudgment interest? I think that you would need to look to the normal rules of preclusion and compulsory counterclaims to determine whether there's an obligation to sort of basic principles. So if the normal rules, you know, applying to compulsory counterclaims applied, so let's say the stipulated judgment was entered before the FDIC and the insureds had to serve their answers, then that would become a compulsory counterclaim that they would need to assert, and the fact that they didn't, they can later be precluded from seeking that relief. But that didn't happen here, and I think that we need to look to the Chrysler decision, the Georgia Supreme Court's decision that established this prejudgment demand requirement, to show that just because at some point in the deck action the FDIC might have acquired the right to assert a claim for indemnity, which it did not do, it shouldn't be precluded from either later seeking indemnity if underwriters didn't voluntarily pay or seeking the interest under the interest was saying this should have been in, you know, their complaint, this should have been in an amendment, and in that case, the Georgia Supreme Court said no, that's not a requirement. As long as you assert it before we enter the final judgment awarding the money damages, that's good enough. And that was the case, and a lot of the cases that we cite are ones where the demand for interest came very late in the litigation, after motions for summary judgment, after appeals even, interlocutory appeals. So it's not a situation where they're trying, it's not a gotcha situation where it's like, oh, you didn't amend, you didn't pursue all possible paths earlier in the litigation to assert this right, so we're foreclosing it. That's just not how the Georgia courts have treated the requirement. And thank you. All right. Ms. Agnew-Benny, you've reserved three minutes for rebuttal, and we'll hear from Mr. Lane. Neil Lane for Underwriters. May it please the Court. A couple of things that might clear up some confusion. One is, originally the FDIC sued these officers and directors as receiver of the bank, but its claims against Underwriters are as assignee of the claims by those individual officers and directors against Underwriters. Okay? Right, but for that reason, couldn't they not sue Underwriters until such time as the judgment was entered against the directors who were insured? Well, I think there was a misstatement earlier that no one had made a claim for damages against Underwriters. In fact, Stephen Klein, one of the officers and directors, had demanded, he had sued for breach of contract against the Underwriters. He'd made a number of other claims. What he did not do was seek enhanced statutory damages under the Georgia law. Okay? As part of his settlement with FDIC, in which they got all the claims he had against Underwriters, they insisted that he drop all of his claims and that he dismiss all of his claims, and they, as Assignore, continued on. So, the bottom line is, what they initially may have sought because of the procedural posture of the case was not a money damages judgment, because at that point, there was still uncertainty. FDIC was initially joined as receiver, as a party that was a necessary party to the litigation. Mr. Lane, I'm a little confused. Let me tell you how I see the case. Yes, sir. As you properly said, FDIC sued the three of them for damages under Georgia law, and they made a demand that you defend them under the coverage. Yes. For what they're wrong doing, they were claiming was insured. Yes. As I understand it. Yes, sir. So, FDIC sues them for what ultimately becomes a coverage question. So, they wind up with $10 million judgment, as I understand it. And these people now assigned, these officers assigned their causes of action against Underwriters to FDIC. Yes, sir. Okay. The declaratory judgment action, this is how I see it. The declaratory judgment action determined, judicially, the Underwriters had coverage. Therefore, should pay the judgment, the $10 million, that it would be covered. Your Honor. Am I wrong there? No, you're not wrong. In fact, I would say that. Well, let me go one step further then, and I'll let you. Okay. At that for the $10 million on their assigned claims, plus the interest. Is that right? In a later point, yes, your Honor. After the case was brought. You mean after this? I thought that there was an exchange between Underwriters and FDIC before this lawsuit was filed. Before this lawsuit was filed, yes, your Honor. Yes, before this, after it is determined by our court that Underwriters covered the loss. They made a demand to pay it. They're now exercising their rights as assignee of these claims against Underwriters. Do you agree? I agree that that's formally what they said they were doing, yes, your Honor. Okay. And they wanted $10 million plus interest. They wanted to enhance statutory interest under Georgia law. Under the statute of interest, I was like, okay. And so now we have this case. Meantime, Underwriters, this is after the declaratory judgment action. That's after the declaratory judgment action. After the initial action that was initiated by Underwriters. I understand that. That's right. Yes. So my question is, under Georgia law, it's a Georgia law question whether Underwriters is obligated for prejudged interest back to the or after the declaratory judgment action said that you were liable for coverage. Your Honor, first, I would say that Underwriters is not liable under either of those two scenarios, and they don't even suggest one of those two dates as the beginning date for damages. If this court concludes that the final judgment by Judge Batten in the earlier action resolved all liability and damages actions, then, and Judge Batten certainly believed that. Now, you can elevate form over substance. I would be hard pressed to come before your Honors and say that that judgment that was entered in the earlier action is not enforceable as against Underwriters in some way, that they couldn't, and if they had some magic words that they needed to render it so that they could absolutely- How is FDI's judgment against the individuals enforceable against Underwriters other than as assignee of their claims against you? So I would agree that the only claim that the FDIC could assert against Underwriters was as assignee- Of $10 million judgment. Of the individual and what- Their claims. And what the judgment said was you are liable for $10 million on this policy,  what judgment said that Underwriters were liable under the policy? Your Honor- Other than the declaratory judgment action. It in fact said that. Your Honor, it says it's hereby ordered to judge and decreed, and it goes on and on, that the policy provides coverage in the stipulated judgments in favor of the FDICR against the individuals in the amount of $10 million. As I read it, Your Honor, it says that Beasley's liable for $10 million to the FDIC. But let's suppose there's no money judgment against Underwriters in this judgment. Let's just suppose that. Okay? Yes, Your Honor. All right. If that's the case, the only way FDIC can recover against Underwriters is to sue Underwriters on their assigned claims. Your Honor- If Underwriters- If they said to Underwriters after this judgment's entered, pay $10 million, and Underwriters said no, we insured them to pay judgment against them, not a judgment in your favor. You don't have a judgment against us. And then they sue you, okay, on the assigned claims. In that scenario, if Beasley had said, oh, you don't have enough to enforce that judgment against Beasley, is that your hypothetical? All right. So your argument is based on interpreting this judgment as a money judgment against Underwriters for $10 million in favor of FDIC. Whether we call it a money judgment or not, what the courts say in Georgia and what occurred here is that this judgment resolved all matters with regard to- I understand that, but I'm interpreting- I was quiet by reading of this judgment, and I didn't see a money judgment against Underwriters. You follow me? Your Honor- In which event, when they made the claim for paying the judgment, when they claimed, we want you to pay the judgment, or this amount of money, forget the judgment. They wanted a pre-judgment interest. Is that not what they did? Well, your Honor, I guess the suggestion would be, why would they have pre-judgment interest if there was no judgment? In other words- No, pre-judgment on the debt, not on the judgment. Your Honor, the choice was made by FDIC as assignee of the claims that had already been asserted by these individuals- Yes. To drop those money damages claims, drop Stephen Klein's money damages claims. Now, what they got, they might have asserted a claim for a declaratory relief, but what they got was a claim stating a fixed amount and liability, and it determined whether you call it- What did the assignment give FDIC? The right to assert any claim under the policies, or otherwise, against- But they could not assert that you owed each of them, each of those three people, collectively $10 million, and you wanted that paid? The only way that those $10 million get paid under liability policy is if they're liable for it, and it's actually, it would be no different if the FDIC had a separate judgment in another case, and that $10 million would be something that would be payable to reimburse, to indemnify these individuals. That's all it is. This is all we're talking about is the claims by the directors and officers under their policy, and that claim was assigned the FDIC, which had no independent right, and actually, it had no independent right- Well, all I want to know is this. After the settlement, could the directors, the three, demand that underwriters pay $10 million to FDIC to satisfy FDIC's judgment against them? That's exactly, they had assigned that right to the FDIC. The FDIC said, drop your damages- Wait a minute. The answer is yes? The answer is, this is what, this is not the FDIC- Let me say, I'll say it one more time. FDIC has a money judgment against the three people for $10 million. Agreed? Their settlement and non-recourse money judgment, yes. Well, a judgment was entered according to Judge Batten in that amount of money. Yes, sir. He said so in his order. They got together and they agreed to an amount- There was a judgment entered in favor of FDIC against the three officers for $10 million. Stop there. You agree? Yes, I stick with that. I promise so. Okay. If FDIC refused to pay the judgment to F, excuse me, underwriters to FDIC, that FDIC could sue underwriters if they were assigned the claims, or these three could sue you. Do you agree? They could only sue as an assignee of these three, which they had already done. Okay. My understanding is that before they had a right to sue underwriters as S and E, they made a demand for prejudgment interest and the payment of the $10 million. They had already sued. They had already asserted a claim as assignees of the claims of those three individuals. How could they have already asserted a claim as assignee? Because Georgia is not a direct action state. The FDIC could not- Oh, I understand that. Yeah. They could not have a claim against- Couldn't have sued underwriters until the judgments entered against them and they are assignees. Exactly. They can't sue. The only claim they have and the only judgment they obtained was in the name of Mr. Klein, Mr. Gray, Mr. Cohen as assignees. Otherwise, they can't be in that courtroom. They acquired their rights against underwriters. Yes. As assignee of those rights. Yes. As underwriters. Now, Mr. Klein, who brought a money damages action, never asserted a claim for enhanced- All he could sue for was to ask you to defend him. That was initially the issue. You defend me in the lawsuit against my FDIC, defend me, and then pay a judgment. Yes, Your Honor. So- Okay. What Jeff Batten determined based on, he looked at the order that he himself had signed and determined that all the matters as to liability and the amount that was owed had been determined in the prior action. And what he said was, looking at that, he said that they had failed, that the FDIC had failed, and it's as ignores, had failed to assert a claim timely for the Georgia statutory interest. Now, why is that important? I would say that they had failed because underwriters never had a right to contest that claim for enhanced statutory interest. But he said something else. He said it would be unjust. And why would it be unjust? Because in the prior action, all of those parties who would have relevant evidence as to whether this was a liquidated claim, to the circumstances in which this came about, and the only basis for underwriters to defend it, they were parties. They could be noticed, and we could have litigated them. You agree that FDIC in their lawsuit against the three individuals could not have claimed prejudgment interest? I don't believe- Because the claims were unliquidated. But Your Honor, I don't believe that a policy, a demand for policy- Weren't the claims unliquidated against- They were unliquidated then. Unliquidated. And they're still unliquidated. Demand for policy limits- No, but the judgment of $10 million is liquidated. I don't agree. It's a demand for the limits of their agreement. But the amount of the agreement- That's your argument that the $10 million judgment is unliquidated. Unliquidated. The $10 million judgment is an assignment of the rights- I know, but it is an unliquidated debt. After the judgments entered, after all the matters are resolved- After the declaratory judgment action said you had coverage, was the $10 million a liquidated debt? Yeah, I believe that was a judgment for $10 million, which underwriters satisfied. No, on appeal, we didn't say anything about a $10 million judgment against underwriters. The judgment was- We said there was coverage. Yes. That's all that was before us, whether there was coverage or not. Do you agree? Yes, it was an issue as to whether- Whether there was coverage, and when we held it was coverage- Yes. Then you became obligated by contract to pay the $10 million debt, insurance contract. No, I would say that we were obligated by the judgment ruling, or by the order saying that we were liable for the $10 million to these individuals. I understand. Thank you, counsel. We'll hear back from Ms. Agnew-Benny. I'd like to just clarify a few things that I think were a bit misleading about Mr. Lane's presentation. Counsel, do you agree that what you said about his argument, that this judgment on the Judge Madden issue, was a money judgment against the insurers? I struggled to see how it could be interpreted as a money judgment against- Money judgment against the three officers. The stipulated judgment- Well, it's a stipulated judgment. Yes, those are money judgments against the directors- In favor of FDIC. Yes. But no FDIC judgment for $10 million against underwriters. No, underwriters was not a party to those actions, so no judgment could have been entered against them there. The court does mention the policy in the order, of course. Yes, because that was mentioned in the settlement agreements, that that was the source of payment. And that's what came to us on appeal. Yes, that's what- Coverage, the coverage issue. So, I guess just to- I understand. I'm not arguing against you. I'm trying to clarify what I think is the case here. Yes, and I think that you have it right, Judge Joflat. I think that the judgment entered in the coverage deck action only did that. It declared coverage. It wasn't a money judgment. That's our position. Are you familiar with Winnett County versus Old Peachtree Partners? Yes, I'm familiar with that case. And we believe it supports our position because that is a case where there was a claim for specific performance of a settlement agreement asserted, and the request for interest was asserted in connection with that. And the court deemed that demand for interest timely, even though it came very late in the litigation, well after some interlocutory appeals and things regarding the enforceability of the settlement agreement. And they found that the demand was timely. And we think the same is true here. It's just that here, things were broken up into separate litigation. It's just the coverage issue was broken up into a separate dispute from the indemnity issue, just because we had to, because of the timing of how things occurred. Underwriters asserted their claim for declaratory relief while the action against the directors and officers was still pending. And I'd just like to clarify. The question isn't whether claims for damages in general were asserted by the insureds, and that somehow precludes the FDIC from seeking interest now. As Judge Schoflot pointed out, those claims only related to the duty to defend. They were damages for bad faith and breach of the duty to defend. They weren't claims for indemnity under the policy. And the insureds couldn't have asserted claims for indemnity under the policy when they served their answers, just as the FDIC couldn't, because the stipulated judgments in the action against the directors and officers had not yet been entered when they served their answers. So their claim that, you know, somehow we, you know, scuttled our chances because we didn't amend the insured's demands for money damages, it just doesn't make any sense. Those are different demands. And they couldn't have made the same claims that we couldn't have made at the time that they served their answers. Thank you, counsel. I think we have your argument, and we appreciate your argument. All right. Thank you. All right, the next case is.